**FILED**

APR X 9 2007

RICHARD W WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

OA 91 Criminal Complaint

# United States District Court

NORTHERN DISTRICT OF CAILFORNIA

WDB

UNITED STATES OF AMERICA
V.
MAURICE KEVIN COLEMAN

CRIMINAL COMPLAINT

Case Number: 4·07-70202

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about **April 5, 2007,** (Date) in **Alameda** County, in the **Northern** District of **California** defendant(s) did,

(Track Statutory Language of Offense)

knowingly possess a firearm, in and affecting commerce, after having been convicted of a felony crime punishable by a term of imprisonment exceeding one year,

in violation of Title **18** United States Code, Section(s) **922(g)(1)**.

I further state that I am a(n) **Special Agent, ATF** (Official Title) and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

Approved As To Form: W. Douglas Sprague
AUSA

Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

4/9/07
Date

at San Francisco, California
City and State

U.S. Magistrate Edward M. Chen
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Tehran Palmer, being duly sworn, declare and state the following:

1. I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been so employed since September 19, 2004. As an ATF Special Agent, I am authorized pursuant to Title 18, United States Code, Section 3051, to investigate possible firearms violations set forth in the Gun Control Act of 1968 and the National Firearms Act of 1934. My official duties also require that I enforce various other federal laws as set forth in Title 18, Title 21, and Title 26 of the United States Code. I am a graduate of the ATF's Special Agent Basic Training, a fourteen-week course, which consisted of written and practical exercises regarding federal firearms violations and federal arson and explosive violations. Additionally, I am a 2005 graduate of the Federal Law Enforcement Training Center's (FLETC) Criminal Investigator Training Program (CITP). Successful completion of the CITP program, a twelve-week course, required students to demonstrate their knowledge and application of constitutional law, federal criminal law, courtroom evidence, and Fourth Amendment seizures.

2. Title 18 United States Code, Section 922(g)(1) provides as follows:

   "(g) It shall be unlawful for any person-

   (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

   ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

3. This affidavit sets forth probable cause to believe that Maurice Kevin **COLEMAN**

1

("COLEMAN") has committed a violation of 18 U.S.C. Section 922 (g)(1). This affidavit is based on my own investigation and information furnished to me by ATF Special Agents, including Special Agents William Moore, Katherine Casteneda, Robert Tucker, Brian Leigh, and Tom Lindsey.

### POSSESSION OF A FIREARM

#### Background: The Firearms Sales in March 2007

4. On Wednesday, March 7, 2007, I, while serving in an undercover capacity and having previously been introduced to **COLEMAN**, met with **COLEMAN** at a Sportsman's Warehouse in an attempt to purchase approximately two firearms. At approximately 4:22 p.m., on the same date, I proceeded to the parking lot of the Sportsman's Warehouse, which was previously agreed upon by **COLEMAN** and I, where I established contact with **COLEMAN**, who was in a Honda Accord. I entered the vehicle and identified **COLEMAN** as the driver and Jessica Aguirre as the passenger. I instructed **COLEMAN** to purchase the cheapest firearms sold at the Sportsman's Warehouse. I provided $1,000 cash to Aguirre, who immediately passed the money to **COLEMAN**. Once **COLEMAN** confirmed the $1,000 cash, Aguirre exited the vehicle and entered the Sportsman's Warehouse.

5. Approximately forty minutes elapsed, then Aguirre exited the Sportsman's Warehouse with two firearms. I took possession of the firearms and observed two Ruger model P90 pistols. I provided **COLEMAN** with $300 cash, which he charged to complete the transaction, and

informed him I would be in contact to purchase more firearms, possibly AK-47 style rifles. **COLEMAN** indicated it would take some time, but he would be able to provide the rifles.

The April 5, 2007, Incident

6.      On Monday, April 1, 2007, I received a phone call from **COLEMAN**, who indicated that he had an AR-15 rifle and would attempt to have an AK-47 rifle for sale. **COLEMAN** indicated that he was in Oakland, California, for a couple of days and would meet me to complete the sale of the rifle. I informed **COLEMAN** that I would contact him in a few days to purchase the rifles.

7.      On Thursday, April 5, 2007, I received a phone call from **COLEMAN**, who indicated that he had both an AR-15 and AK-47 for sale. In addition, **COLEMAN** indicated he had a "boat," which is a colloquial term for one thousand pills of ecstasy. I had spoken with **COLEMAN** on Wednesday, March 4, 2007 concerning the purchase of the "boat" of ecstasy for approximately $5,000. However, I informed **COLEMAN** that I would not have the money to purchase the ecstasy, but I would purchase the two rifles. **COLEMAN** informed me that he would charge $3,000 for both firearms ($1500 each).

8.      I spoke with **COLEMAN** at approximately 1:29 p.m. on Thursday, April 5, 2007, and indicated that I would meet him in a parking structure located at 3700 Mandela Parkway, Emeryville, California. I received a phone call from **COLEMAN**, who arrived at the parking lot at approximately 5:27 p.m., stating he wanted to complete the transaction in his vehicle. I observed a maroon Buick Park Avenue, driven by an individual later identified as Ronaldo Arguello ("**ARGUELLO**"). **COLEMAN** was in the back seat of the vehicle. I informed

**COLEMAN** that I wanted the transaction to take place in my vehicle. **COLEMAN** initially refused then agreed to complete the transaction at my vehicle.

9. I exited my vehicle and made contact with **ARGUELLO** and **COLEMAN** at the rear of my vehicle. I observed **ARGUELLO** and **COLEMAN** in their vehicle through the passenger side window. As soon as I approached their vehicle, both **COLEMAN** and **ARGUELLO** insisted I get into their vehicle. I informed **ARGUELLO** and **COLEMAN** that I would not conduct any transaction inside their vehicle. I questioned them both concerning where the rifles were located in the vehicle. **ARGUELLO** indicated the firearms were in the trunk of the vehicle. **ARGUELLO** again asked me to get into their car, but I refused. I informed **ARGUELLO** I wanted to finish the deal quickly so I could leave. **ARGUELLO** indicated he needed to make sure I had the full amount of money for the purchase. I provided **ARGUELLO** with $2600 cash in a transparent bag. **ARGUELLO** appeared to thumb through the money in the process of counting. Approximately twenty seconds elapsed, at which time **ARGUELLO** looked at me, said thanks, and drove quickly out of the parking lot in an erratic manner.

10. I observed ATF surveillance units follow the vehicle outside of the parking structure heading toward 40th Street in Emeryville. I consulted Special Agent Castaneda, who indicated **ARGUELLO'S** vehicle spun out of control and hit a pole in vicinity of 40th Street and Shellmound Street. Special Agent Castaneda observed both **ARGUELLO** and **COLEMAN** exit the vehicle. Special Agent Castaneda and ATF Resident-Agent-in-Charge Tom Lindsey took **ARGUELLO** into custody.

11. I consulted ATF Special Agent Leigh, who indicated that **COLEMAN** attempted to

evade arrest by taking flight across the Interstates 80/580 highway. Special Agent Leigh pursued **COLEMAN** across the I-80/580 highway. Special Agent Leigh told me that while he pursued **COLEMAN**, Leigh observed **COLEMAN** throw a silver handgun into the air while he jumped over a concrete barrier. Leigh told me that he apprehended **COLEMAN** shortly thereafter in a marshy region located on the other side of the concrete barrier before Special Agents Castaneda and Tucker responded to Leigh's position and took custody of **COLEMAN**.

12. Special Agent Leigh told me that he backtracked his course of travel to the concrete barrier to obtain the silver firearm **COLEMAN** discarded as he fled. Special Agent Leigh told me that he observed a silver pistol on the highway in vicinity to the concrete barrier, where he had observed **COLEMAN** discarding the firearm. Special Agent Leigh told me that he identified this firearm as consistent with the firearm he witnessed **COLEMAN** discard. Special Agent Leigh took possession of the firearm, which was later processed as evidence by the ATF Oakland Field Office and determined to be a Smith & Wesson, model 1006, 10 millimeter pistol.

## COMMERCE ELEMENT

13. On Thursday, April 5, 2007, ATF Special Agent Robert Tucker, an ATF Firearms Interstate Nexus Expert, reviewed the Smith & Wesson, model 1006, 10 millimeter pistol recovered after **COLEMAN** discarded it. Special Agent Tucker determined that the firearm was manufactured in the State of Massachusetts and therefore it is his opinion that if the firearm was possessed in the state of California, it must have traveled in or affected interstate commerce. Special Agent Tucker has informed me that he has received extensive specialized training in tracing the place of manufacture of firearms and ammunition and has been certified as an expert in interstate nexus issues in the United States District Court, Northern District of California.

## PRIOR FELONY CONVICTION STATUS

14. On Thursday, April 5, 2007, and on Friday, April 6, 2007, I reviewed **COLEMAN'S** criminal history records, which indicate that in or about August 2001 **COLEMAN** sustained a felony conviction in violation of California Vehicle Code 10851(a) (taking a vehicle without owner's consent/vehicle theft) in San Mateo, California. According to his criminal history report, **COLEMAN** was sentenced to 3 years probation and two months in jail for that offense. I have reviewed Vehicle Code Section 10851, which indicates that a violation of that section can be punishable by a term of imprisonment exceeding one year in state prison.

## CONCLUSION

15. Based on the foregoing, I believe that there is probable cause to believe that on or about April 5, 2007, **COLEMAN**, having previously been convicted of a felony crime punishable by a term of imprisonment exceeding one year, did knowingly possess a firearm in and affecting interstate commerce, in violation of Title 18, United States Code, Section 922 (g)(1).

//

I declare under penalty of perjury under the laws of the Unites States that to the best of my knowledge the foregoing is true and correct.

TEHRAN PALMER
Special Agent, Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Subscribed and sworn to before me this 9_th day of April 2007 in San Francisco, California.

EDWARD M. CHEN
United States Magistrate Judge

6